## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

THOMAS H. CONNOLLY *vs.* MARY A. SULLIVAN.

Suffolk. November 16, 1898. — March 2, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Work — Contract — Auditor's Report — Damages.*

In an action for work and labor performed and furnished in excavating a lot of land, under a written contract which was not completed, if the only evidence is the report of an auditor, which, besides stating the general conclusions to which he came, states the particular facts and circumstances relating to those conclusions, the defendant is entitled to go to the jury on the question whether, upon the auditor's report, the plaintiff was prevented by the defendant from going on with the contract, or whether it was terminated with his consent, manifested in such a manner that the defendant was justified in acting upon it.

CONTRACT, to recover $1,622.50, the balance alleged to be due the plaintiff for work and labor performed and furnished in excavating a lot of the defendant on Cedar Street, in Boston. Trial in the Superior Court, before *Sheldon,* J., who allowed a bill of exceptions, in substance as follows.

The work was done under a written contract, by the terms of which the plaintiff agreed to build a cellar upon the defendant's land, and a drain to connect with the sewer in the street, and

1

also to do the rough grading of the lot, the cellar to be built in accordance with plans or specifications to be furnished to the plaintiff by one Rantin, and the work to be finished on or before July 1, 1895; and the defendant agreed to pay for the same to the plaintiff the sum of $750. Neither party offered any evidence other than that contained in the report of an auditor to whom the case had been referred. The facts found and stated by the auditor, so far as material, were as follows:

"At the time of making the contract, the lot owned by the defendant was practically a ledge having a bank wall of about four feet in height on its northerly boundary, next to the street. The ledge rose quite abruptly in height just back of the wall, and over the surface of a considerable part of the lot was over twenty feet in height above the street. The lot was considerably higher along its easterly side than it was on a part of its southerly boundary. The ledge was composed of Roxbury stone, and a great deal of conflicting evidence was introduced as to its quality. Over part of the ledge there was a coating of earth of varying thickness, but in no place was there any great depth of soil. The lot was between forty-five and fifty feet in width, and there were two dwelling-houses on the adjoining lots, and the neighborhood was thickly settled.

"After the making of the contract, the plaintiff went to work under the same. He did not complete the work by July 1, as provided for by the contract, but any objection as to his failure to do this was waived by the defendant. The defendant failed to secure the approval of the inspector of buildings of her plans for the construction of the building, and Rantin, acting for the defendant, told the plaintiff 'to go slow' on that account, and told the plaintiff that he, the architect, would have to make a new set of plans in order to get a permit. A new set of plans was made, and the defendant figured on the same, but no new contract was ever made.

"In these details the parties are in substantial accord. The plaintiff about that time stopped work. He claims that he was directed to stop by Rantin. This Rantin denies. It is evident that the defendant acquiesced in the stopping of the work, even if she or her agents did not direct it, as no demands were made upon the plaintiff to complete his contract, and the whole chain

of circumstances shows that the defendant could not have desired the completion of the contract. Upon all the evidence, I find that the defendant, by her duly authorized agent, Rantin, directed the plaintiff to stop work. The plaintiff did not object to stopping work under his contract, and acquiesced in the direction to stop work.

"Considering all the evidence on this question carefully, I find that the work and labor performed and furnished by the plaintiff, including services of his teams and supplies furnished, (after allowing for the value of the stone removed by the plaintiff,) was fairly worth $1,200, independently of the contract.

"I find that to complete the work required to be done under the contract, including the excavating required to build the cellar, grade the lot to its entire width as shown by plans, and build the cellar walls and piers, and also construct a sewer connecting with the main sewer in the street, considering that considerable of the stone required for the walls could be found on the premises, would be fairly worth $925.

"On August 17, 1895, the defendant paid the plaintiff $250 on account.

"The plaintiff contended that, under the circumstances aforesaid, he was, as matter of law, entitled to recover the fair market value of all the work performed and furnished by him, irrespective of the contract price. If his contention is correct, I find that he is entitled to recover said sum of $1,200, less a credit of $250, leaving a balance due of $950, and interest from the date of his writ.

"The defendant contended that, if the plaintiff was entitled to recover at all, his recovery must be with reference to the price that he agreed to perform the entire work for, to wit, $750; and that she was entitled to the benefit, by way of diminution of damages, of the stipulations of the contract, and a deduction for anything remaining undone under the contract proportioned upon the contract price; and that the contract price must be considered upon the question of real value to the defendant of the plaintiff's services.

"It seems fair to both parties that these considerations should be given great weight in determining the amount, if any, which the plaintiff should receive. Because the plaintiff saw fit, with

the acquiescence of the defendant, to stop the work, she should not be compelled to pay more than she would have been if the contract had been completely fulfilled, a cellar built and connected with the sewer, and her land rough graded. It is evident that, if the defendant had required the plaintiff to carry out his contract, he would have lost a large sum of money, and it does not seem right to allow him to avoid the consequences of a bad bargain by reason of an act that prevented a still greater loss to him, was evidently for his benefit, and in which he acquiesced.

" Considering all these things, and determining the fair price of the work done irrespective of any contract to be $1,200, as aforesaid, and estimating the work remaining to be done at $925, the contract price being $750, I find the plaintiff is entitled to recover in this action the sum of $425, less the amount already paid him of $250, leaving a balance now due him of $175, with interest from the date of the writ."

At the trial, the defendant requested the following rulings:

" 1. On the facts found by the auditor, the plaintiff is entitled to recover only *pro rata* upon the basis of the contract price.

" 2. The plaintiff is not entitled to recover anything more than the amount found by the auditor to be due to the plaintiff, to wit, the sum of one hundred and seventy-five dollars, and interest from the date of the writ.

" 3. There being no evidence offered upon either side to control the auditor's report, the verdict must be in accordance with the finding therein, to wit, for the plaintiff in the sum of one hundred and seventy-five dollars, and interest from the date of the writ."

The judge refused so to rule, and directed the jury to return a verdict for the plaintiff in the sum of $950, and interest from the date of the writ ; and the defendant alleged exceptions.

*W. Bolster*, for the defendant.

*F. C. Dowd*, for the plaintiff.

MORTON, J. The exceptions in this case were not only to the refusal of the court to give the rulings which were requested, but to the ruling by which the jury were directed to return a verdict for the plaintiff, irrespective of the contract price, for a sum which the auditor had found was the fair market value of all the work and labor performed and furnished, less what the

defendant had paid on account. That is, as we understand the exceptions, the court ruled in effect, as matter of law, against the objection of the defendant, that, on the auditor's report, the plaintiff was entitled to recover the amount for which the jury were directed to return a verdict, without regard to the contract price. The auditor's report was the only evidence in the case. It not only stated the general conclusions to which the auditor came, but it stated particular facts and circumstances relating to those conclusions, and we think that the defendant was entitled to go to the jury, if he so desired, on the question whether, upon the auditor's report, the plaintiff was prevented by the defendant from going on with the contract, or whether it was terminated with his consent, manifested in such a manner that the defendant was justified in acting upon it. *Marland* v. *Stanwood*, 101 Mass. 470, 478. *Emerson* v. *Patch*, 129 Mass. 299. *Peaslee* v. *Ross*, 143 Mass. 275.

If the former was the case, then the plaintiff would be entitled to recover, independently of the contract price, the value of the labor and materials furnished and of which the defendant had had the benefit, and the contract price would be important or admissible only so far as it might tend to throw light, if at all, on the value of the labor and materials actually furnished. *Fitzgerald* v. *Allen*, 128 Mass. 232. If the latter was the case, then we think that the plaintiff's right of recovery would be limited by the contract price, and the amount recoverable would depend on the ratio of the value of the labor and material actually furnished to what should be found to be the total cost of the work when completed according to the contract. See *Veazie* v. *Hosmer*, 11 Gray, 396; *Atkins* v. *Barnstable*, 97 Mass. 428; *Hayward* v. *Leonard*, 7 Pick. 181; *Koon* v. *Greenman*, 7 Wend. 121.

In other words, in that event we think that the rule adopted by the auditor would be substantially correct.

*Exceptions sustained.*